IN THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DIGITAL ALLY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:10-CV00127-HFS ) |
| RODNEY L. BEARD | ) ) |
| Defendant. | ) |

## CONSENT DECREE AND JUDGMENT FOR INJUNCTIVE RELIEF

WHEREAS, plaintiff Digital Ally, Inc. ("Digital") has commenced this action by filing the Complaint herein; defendant Rodney L. Beard ("Beard") has waived service of the Summons and Complaint; the parties have been represented by the attorneys whose names appear hereafter; and the parties have agreed to settlement of this action upon the following terms and conditions, without adjudication of any issue of fact or law and without Beard admitting liability for any of the matters alleged in the Complaint or that the facts, as alleged in the Complaint, other than the facts relating to jurisdiction and the sufficiency of the Complaint for purposes, *inter alia*, of Fed. R. Civ. P. 12(b)(6), are true;

THEREFORE, upon the joint motion and stipulation of Digital and Beard, and for good cause appearing, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.  This Court has jurisdiction of the subject matter and of the parties pursuant to, *inter alia*, 11 U.S.C. §§ 1331, 1332, 1337 and/or 1367.

1

2. The Complaint states a claim upon which relief may be granted against Beard under § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and Securities & Exchange Commission Rules 14a-3, 5, 6 and 9, 17 C.F.R. §§ 240.14a-3, 5, 6 and 9.

## DEFINITIONS

3. For purposes of this Consent Decree, the term "Rule" means the Securities & Exchange Commission's Rules concerning proxies, solicitations of or for proxies and the sale or offering for sale of securities, as contained in 17 C.F.R. Part 240 and/or as the Rule may hereafter be amended.

4. For purposes of this Consent Decree, the term "document" means any medium upon which any oral or written utterance, statement, communication, information and/or any intelligence of any kind can be or has been recorded, retrieved, or preserved and includes, without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telefax, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing, sketch, graph, index, list, tape, photograph, microfilm, data sheet or data processing card, tape, disk, diskette or any other written, recorded, transcript, punched, taped, filmed or graphic matter, however produced or reproduced, which is in the possession, custody or control of Beard, or which was but is no longer in Beard's possession, custody or control.

5. For purposes of this Consent Decree, the term "relating to" (or any form thereof) shall mean constituting, reflecting, respecting, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating

or relevant to. As indicated, the term necessarily includes information which is in opposition to, as well as in support of, the contentions, allegations, arguments and/or position of any party to this action.

## INJUNCTION

6.  Beard, his successors and assigns, his agents, servants, employees and attorneys and all other persons in active concert or participation with any one or more of them, who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from violating, directly or indirectly, through any corporation, partnership, limited liability company, joint venture, subsidiary, division or other device, any provision of the Rule in any way including, but not limited to:

   a. By making and publishing written statements and communications which have directly or indirectly impugned the character, integrity or personal reputation of Digital's management, directorate and/or other shareholders;

   b. By making and publishing written statements and/or communications which have directly or indirectly charged Digital's management and/or directorate, without factual foundation, with improper, illegal or immoral conduct or associations;

   c. By claiming that holders of 500,000 shares of its stock have committed themselves to the "removal" of Digital's management or its Board of Directors;

   d. By claiming that the value of Digital shares is "going downhill";

   e. By claiming that the "promises" of Digital's management are being "broken" and that the morale of its employees is not being destroyed;

   f. By claiming that a "battle" at or for Digital is in progress or "just beginning";

   g. By claiming that Digital officers have paid "big bonuses" to themselves;

   h. By claiming that Digital's management and directorate have "lied" to Digital shareholders or to the investing public;

3

      i. By claiming that Digital management and/or its directorate have given "misleading guidance" to its shareholders or to the investing public;

      j. By claiming that Digital's Board of Directors and executives are the "only people making money" at Digital;

      k. By claiming that Digital's executives and Board of Directors are "making money … at stockholders' expense";

      l. By claiming that Digital's Board of Directors has received "almost a million dollars in compensation per year";

      m. By claiming that Digital's "money" goes "to the upper echelon" of its management, rather than to its shareholders;

      n. By claiming that Digital is a "personal piggybank for" its President, Mr. Stanton Ross, or for his "cronies";

      o. By claiming that shareholders entitled to the same have been denied access to Digital's list of shareholders;

      p. By claiming that Digital is "fighting" to prevent one or more of its shareholders from obtaining the list of its shareholders;

      q. By claiming that there is an actual or impending "battle over" Digital's Board of Directors or its management;

      r. From committing, causing or permitting any violation of the Rule.

7. Beard, his successors and assigns, his agents, servants, employees and attorneys and all other persons in active concert or participation with any one or more of them, who receive actual notice of this Consent Decree by personal service or otherwise, are hereby commanded, directed and enjoined to perform and accomplish each and all of the following and except as otherwise directed herein, to do so not later than fifteen (15) days from and after the date of entry of this Consent Decree:

      a. To produce and deliver for inspection and copying by Digital any and all documents relating to Digital or to securities issued by Digital or to any

tender offer for or respecting those securities or to the solicitation of proxies respecting those securities and/or to any acts, actions or proceedings which have as their object or purpose the ouster or replacement of Digital's incumbent management and/or directorate;

b. To produce and deliver for inspection and copying by Digital any and all documents relating to any officers, directors or employees of Digital, whether past or present;

c. In the case of Beard, to agree upon a date, time and place to appear for examination, by counsel for Digital, under oath, to be recorded by videotape as well as stenographic means and, subject to the provisions of Fed. R. Civ. P. 30(b)(5) and 30(c), (d), (e) and (f), to testify freely and truthfully concerning or regarding matters relating to Digital, securities issued by Digital, the solicitation of proxies with respect to securities issued by Digital, tender offers of or for securities issued by Digital, acts, actions or proceedings which have as their object or purpose the ouster or replacement of Digital's incumbent management or directorate, Digital's officers, directors and employees and each and every other matter which is or may be relevant to Digital and/or may lead to the discovery of facts relevant to Digital, within the meaning of Fed. R. Civ. P. 26(b)(1);

d. Not later than five (5) days next preceding the date upon which Beard is to submit to examination to produce for examination, inspection, use, operation and, as necessary, non-injurious dismantling or disassembly by a disinterested consultant or technician selected by and agreeable to Digital and Beard ("Technician") such computers, data processing machines, instruments and devices as may contain, in digital or electronic form, any documents concerning, regarding or relating to Digital, securities issued by Digital, tender offers of or for securities issued by Digital, proxies or solicitations of or for proxies relating to Digital or securities issued by Digital, acts, actions or proceedings which have as their purpose the ouster or replacement of Digital's incumbent management or directorate and/or Digital's officers, directors, employees and/or shareholders which documents shall, under Beard's observation, be extracted or retrieved therefrom by such Technician, at Digital's expense, and upon extraction or retrieval, delivered to Digital.

**COMPLIANCE AND RELEASE**

8. In consideration of and for their mutual execution and approval of this Consent Decree, Digital and Beard shall, as of the date of entry of this Consent Decree, be deemed to have released one another and each of their respective officers, directors, employees, agents, attorneys, subsidiaries and affiliates (and all officers, directors, employees, agents and attorneys of such subsidiaries and affiliates) from and against any and all debts, claims, claims for relief and/or causes of action arising out of any acts, omissions, events, facts or circumstances which exist on or which arose, transpired or occurred prior to the date of entry of this Consent Decree.

9. Notwithstanding the foregoing, no claim, obligation or duty arising under this Consent Decree shall be released or discharged absent further of the Court adjudging and declaring that such claim, obligation or duty has been fully satisfied and performed or adjudging and declaring that exigent circumstances require that the party obligated hereunder for the satisfaction or performance of such claim, obligation or duty be released and relieved from or from some portion of such claim, obligation or duty.

## COSTS AND ATTORNEYS' FEES

10. Digital and Beard shall each bear its and his own costs, attorneys' fees and/or expenses herein incurred or expended.

11. Notwithstanding the foregoing, all reasonable costs and expenses, including reasonable attorneys' fees, which may be incurred by any party in the context of a successful action to enforce this Consent Decree or any of its provisions shall be borne by and recoverable from the party against whom enforcement is or was sought.

## GROUNDS FOR ENTRY OF THIS CONSENT DECREE

12. In United States v. Armour, 402 U.S. 673, 681 (1971), the Court observed that "[c]onsent decrees are entered into by the parties to a case after careful negotiation" and are the product of a mutual "agreement on [the] precise terms" of the decree. In so doing, "[t]he parties waive the right to litigate the issue involved in the case and thus save themselves the time, expense and inevitable risk of litigation".

13. The Consent Decree, presented to this Court, appears to be the product of "careful negotiation" on each and every term. While Beard does not concede liability and although Digital contends that it might have achieved more after a lengthy litigation process, each agrees that the within Decree represents a thoughtful, measured approached to what are otherwise difficult issues involving the securities laws.

14. At the same time and while the Court is mindful of the considerable deference which it must accord to the parties' agreements, as embodied in this Consent Decree, *see,* Hester Industries, Inc. v. Tyson Foods, Inc., 160 F.3d 911, 916 (2nd Cir. 1998) (citing cases), since they seek to invoke, prospectively, the Court's substantial contempt powers, it is obliged to review that agreement with sufficient care to determine whether it is within the bounds of fairness, reasonableness, adequacy and to some degree whether it serves the public interest, *see*, SEC v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984); *see, also*, SEC v. Wang, 944 F.2d 80, 85 (2nd Cir. 1991). *See, generally*, United States v. ITT Continental Baking Co., 420 U.S. 223 (1975); United States v. North Carolina, 180 F.3d 574 (4th Cir. 1999).

15. Having reviewed the terms and conditions of the Consent Decree, the Court finds that the within Consent Decree and corresponding Judgment is in fact fair, reasonable and adequate and that it comports with the substantial public interest that attends any controversy involving publicly-

traded securities.

## CONTINUING JURISDICTION

16. This Court shall retain jurisdiction of this matter for purposes of enabling any of the parties to this Consent Decree to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the interpretation or modification of this Consent Decree, for the enforcement of compliance therewith or for the punishment of violations thereof.

**JUDGMENT IS THEREFORE ENTERED** in favor of plaintiff Digital and against defendant Beard pursuant to each and all of the terms and conditions recited above.

Dated: 7/6/10        /s/ Howard F. Sachs
                     The Honorable Howard Sachs
                     Senior United States District Judge

The parties, by their respective counsel and representatives, hereby consent to the terms and conditions of the within Consent Decree as set forth above and consent to the entry thereof as the judgment of the Court.

DIGITAL ALLY, INC.                           RODNEY L. BEARD

By: ___/s/_____        /s/_____

Title: __CFO, Secretary_____

Dated: __4-1-2010_____        Dated: __3/30/10_____

Submitted by:

| McDOWELL, RICE, SMITH & BUCHANAN | WITHERS, BRANT, IGOE & MULLENNIX |
|---|---|
| */s/ James F.B. Daniels* | */s/ Rodney A. Ames* |
| James F.B. Daniels, MO Bar #30003 | Rodney A. Ames, MO Bar #44865 |
| 605 W. 47th Street, Suite 350 | Two S. Main Street |
| Kansas City, MO 64112 | Liberty, MO 64068 |
| (816) 753-5400 telephone | (816) 781-4788 telephone |
| (816) 753-9996 telecopier | (816) 792-2807 telecopier |
| ATTORNEYS FOR DIGITAL ALLY, INC. | ATTORNEYS FOR RODNEY L. BEARD |